_|_1LOLLEY, J.
Catherine Smith (“Smith”) appeals a judgment of the Fourth Judicial District Court for the Parish of Ouachita in favor of the Office of Elderly Affairs for the State of Louisiana (“Elderly Protective Services”). The single issue is whether the facts and law operative herein support the interdiction judgment against Smith. For the reasons set forth below, we affirm the Judgment of Full Interdiction.
Facts
At the trial of the rule for Smith’s full interdiction, the parties declined to have the proceedings recorded by a court reporter. Because the testimony of the witnesses was not taken down in writing or recorded, and because there was no narrative of facts in the record, by Order dated October 16, 2003, this court gave Smith the opportunity to file a written narrative of facts, stipulated to and signed by counsel for appellant and appellee. The following is the parties’ Joint Stipulation of Facts:
Ms. Smith is a seventy-three year old white female. Elderly Protective Services received a report on Ms. Smith from the Sheriffs office. The report alleged that Ms. Smith was calling the Sheriffs office on a frequent basis making allegations that Ms. Smith’s niece was stealing from Ms. Smith and that these allegations were without merit.
As a result of this report, ANONA BOWIE, an employee of Elderly Protec-
*892 tive Services, came into contact with Ms. Smith. Ms. Bowie noticed that Ms. Smith’s tongue and face were swollen and that Ms. Smith spoke non-stop about her niece stealing from her. Ms. Smith stated that the niece climbed through a window and stole things from Ms. Smith.
Ms. Bowie asked Ms. Smith about her face and tongue and Ms. Smith stated that she had stopped taking her medication and was now “going through detoxification with supplements.”
12Concerned about Ms. Smith’s health, Ms. Bowie continued her investigation and learned that Ms. Smith had been prescribed medicine for fluid retention and medicine for diabetes, and medicine for mental health and that Ms. Smith was not taking any of these medications.
Ms. Bowie continued her investigation and learned that Ms. Smith had, in fact, been calling the Sheriffs Office on a frequent basis making allegations that Ms. Smith’s niece was stealing from Ms. Smith and that these allegations were, in fact, without merit.
Ms. Bowie continued her investigation by contacting Dr. Sunil Prem, a doctor who had treated Ms. Smith in the past. This doctor told Ms. Bowie that Ms. Smith’s failure to take her prescribed medications could result in a life threatening situation.
Because of the life threatening nature of Ms. Smith’s medical condition, Ms. Bowie went to the Coroner’s Office. Ms. Bowie explained Ms. Smith’s situation to the Coroner and as a result, the Coroner issued an Order of Protective Custody.
Under the Order of Protective Custody, Ms. Smith was involuntarily taken and admitted to North Monroe Medical Center, Transitions Geriatric Psychiatry Unit.
That defendant’s treating physician at this facility was of the opinion that Ms. Smith has a long history of mental illness; that she suffers from Schizoaffec-tive Disorder; that she was admitted to the hospital for severe agitation; that she had been calling the Sheriffs Department frequently alleging that her niece was trying to steal things from her; that Ms. Smith has a history of noncompliance with her medications because she believes she is “well” and does not need medications; that she lacks insight into her problems; that she was continuing to refuse medications; that she continues to be paranoid; that she lacks decision making capacity with regards to her treatment and is unable to appreciate the consequences of not taking the treatment and medications for her illness.
The Doctor was of the opinion that the least restrictive medically appropriate placement for Ms. Smith is Monroe Manor Nursing Home, with the condition that Ms. Smith be mandated to take all medications prescribed to her by her treating physician.
IsMs. Smith was refusing such placement and is refusing to take medications.
As a result, Elderly Protective Services filed a Petition for Ex-Parte Order to Provide Emergency Protective Services as per R.S. 14:403.2(N)(1) on March 3, 2003. A temporary ex-parte order issued compelling Ms. Smith to comply with treatment, including placement at Monroe Manor Nursing Home. A hearing was set in that matter for March 14, 2003. Judgment for plaintiff was granted at this March 14, 2003 hearing, and an Order was issued compelling Ms. Smith to comply with treatment, including placement in Monroe Manor [to] be extended for a period not *893 to exceed thirty (30) days as per R.S. 14:403.2(N)(2) and (F)(1)(e).
Also on this date, Elderly Protective Services filed a Petition for Preliminary and Full Interdiction. A hearing on the preliminary interdiction was set for April 7, 2003, and on that date, a Judgment of Preliminary Interdiction was granted. That provisional curator continued to maintain Ms. Smith’s placement at Monroe Manor Nursing Home. Petitioner, on April 7, 2003, filed a Motion to Set a Trial Date for the Permanent Interdiction. The court set the trial date for May 5, 2003.
On May 5, 2003, the hearing was held. Through stipulations and the testimony of Anona Bowie and Catherine Smith, all of the facts previously mentioned in this stipulation were introduced into evidence at that time. In addition, the following documents were introduced into evidence: the medical records of Catherine Smith, which includes but are not limited to a two (2) page Psychiatric Evaluation by Krishna Kambhampati, MD ... to “Elder Protective Services”; the Judgment of March 14, 2003 and the Judgment of April 7, 2003.
In addition to these facts and documents, the following facts were introduced into evidence:
The defendant’s spouse is no longer alive.
The names and address of the adult children of the defendant are Debbie Grabert, 1513 Cherry Street, Slidell, Louisiana 70460 and Barbara Johns, P.O. Box 425, Dittmer, Missouri.
The names and addresses of the nearest adult relatives are Jessie Conville, 103 Michael Avenue, Monroe, Louisiana 1471202 and Mr. and Mrs. John Dick Conville, 103 Michael Avenue, Monroe, Louisiana 71202.
Debbie Grabert, who is forty-seven (47) years old; was the proposed curator. Her domicile is Slidell, Louisiana, education is completed 11th grade and current address is 1513 Cherry Street, Sli-dell, Louisiana 70460. The reasons why the proposed curator should be appointed are: Barbara Johns, who lives ' in Missouri, is further away and all of the other relatives are not willing to take on this responsibility.
Barbara Johns was the proposed un-dercurator.
Plaintiff then rested and defendant’s attorney called Catherine Smith. Catherine Smith took the stand on her own behalf and testified as to her name and that her address was “South Grand Street.” Although her testimony was long-winded, rambling and non-responsive to many of the questions asked, of her, she did state that her hobby is studying medicines and that she is a “Sog” dietician.
Ms. Smith stated that she felt that her current and past residence has been broken into by thieves and burglars on a repeated basis and that she called 911 whenever she felt someone was entering her home. She stated that she believed that her former landlady stole from her. She stated that she believed her niece and other family members also stole from her.
Ms. Smith stated that “we got the worms from the bad meat” sometime in the late 1960’s but that she cured herself of “the worms.” Although difficult to follow, Ms. Smith stated that terrorists were somehow responsible for both the worms and the bad meat. Ms. Smith testified that she had been in a psychiatric hospital in Texas in the 1960’s and in 1972 and that she was prescribed Valium and that some of her doctors had tried to poison her and therefore the *894 only medicines she wanted to take were “vitamins and supplements.”
Ms. Smith also stated that she did not trust her family because “too many comments were made.”
Following the interdiction hearing, a judgment was entered by the trial court ordering the full interdiction of Smith. Following the trial court’s judgment, Smith sent a letter to the trial court judge, wherein she expressed |sher dissatisfaction with the ruling. The trial court considered Smith’s letter a request for appeal, which was granted, and this appeal by Smith ensued.
Discussion
A court may order the full interdiction of a natural person of the age of majority, or an emancipated minor, who due to an infirmity, is unable consistently either to make reasoned decisions regarding the care of his person and property, or to communicate those decisions, and whose interest cannot be protected by less restrictive means. La. C.C. art. 389. Revision comment (d) to article 389, specifically states that:
A person is unable consistently to make reasoned decisions if, for example, he suffers from an infirmity which intermittently deprives him of reason. A person who experiences periodic deprivations of reason can inflict substantial harm to himself or his property during such bouts and is a candidate for full interdiction. In short, that a person suffering from an infirmity may experience lucid intervals does not render him ineligible for full interdiction.
The petitioner in an interdiction proceeding shall prove by clear and convincing evidence all facts justifying interdiction. La. C.C.P. art. 4548.
Since the determination of whether to order interdiction is a finding of fact, we will not set aside the trial court’s finding in the absence of manifest error or a clearly wrong determination. Interdiction of Cornwell v. Cornwell, 97-425 (La.App. 3d Cir.10/15/97), 702 So.2d 938, 940, citing, Stobart v. State through Dept, of Transp. and Development, 617 So.2d 880 (La.1993). When the trial court’s finding are based on determinations regarding the credibility of witnesses, the manifest error standard accords great deference to those factual findings, because only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily | fion the listener’s understanding and belief in what was said. Rosell v. ESCO, 549 So.2d 840 (La.1989); Pope v. Prunty, 37,395 (La.App.2d Cir.08/20/03), 852 So.2d 1213, writ denied, 2003-2496 (La.11/26/03), 860 So.2d 1137.
In the instant case, the trial court had the opportunity to observe Smith at the interdiction hearing. As noted in the stipulated facts, Smith’s testimony was “long-winded, rambling and non-responsive to many of the questions asked of her.... ” Furthermore, in addition to all of the facts in the joint stipulation of facts, the trial court had before it Smith’s medical records. After reviewing the stipulated facts and medical records, we detect no manifest error in the trial court’s decision to order full interdiction.
The fact that Smith had sought medical attention on occasions in the past (as argued by Smith) is simply some evidence of her ability to care for herself. However, the trial court obviously concluded that such evidence clearly was outweighed by the other evidence, including her life-threatening medical condition brought on by failure to take her prescribed medications, her paranoia, and her lack of appreciation of the consequences of not taking her medications. Furthermore, while we appreciate that Smith is elderly, and *895 that old age alone does not equate to a need for interdiction, Smith’s problems went far beyond those of merely being elderly and having a harder time keeping “a constant train of thought.”
As for the truthfulness of Smith’s allegations of theft by her niece, we note that the stipulation of facts herein states that when Bowie, an employee of Elderly Protective Services, began to investigate Smith’s case, she 1Jearned that Smith had been calling the Sheriffs Office on a frequent basis making allegations that her niece was stealing from her “and that these allegations were, in fact, without merit.” Furthermore, the joint stipulation of facts indicates that Smith’s appellate attorney, by submitting the stipulation to this Court, was agreeing with the narrative of facts rather than obtaining a written narrative of facts from the trial judge. Under these circumstances, it would be inappropriate for us to entertain the argument that the trial court erred in concluding that Smith’s statements about her niece were false. Nevertheless, we observe that nothing in the record specifically indicates that the trial court reached such a conclusion, and that even without any testimony concerning Smith’s allegations against her niece, we could not conclude that the trial court erred in ordering interdiction based on the remaining evidence.
Conclusion
For the reasons set forth above, the trial court’s judgment is affirmed at Catherine Smith’s cost.
AFFIRMED.