## HYDE ET AL. *vs.* JENKINS.

### APPLICATION FOR A MANDAMUS.

The judge *a quo* cannot withhold an order of appeal, on the ground of his consciousness that his decision is correct.

Although a party, against whom a judgment has been rendered, is unable to give security to prevent its execution, he may claim an appeal, if he judges it for his interest to prevent the decision *against* him from passing *in rem judicatam.*

To entitle a party to an appeal from an interlocutory judgment, it is unnecessary that the injury be *absolutely* irreparable. It suffices if it be such as would be irreparable by the final judgment, or the action of the Supreme Court on that judgment.

An interlocutory decree may be appealed from, which discharges the plaintiff's hold on the body of the debtor, and on the property sequestered or attached.

If an appeal be claimed within the legal delay, the judge *a quo* cannot refuse to allow it, because the judgment was rendered by his predecessor, who died without making a statement of facts.

On an application for the writ of *habeas corpus*, the decision of the judge upon matters of a criminal or political nature, is not examinable in the Supreme Court.

The writ of *habeas corpus* may be issued in civil, as well as in criminal and political cases.

EASTERN DI.S
*May*, 1834.

HYDE ET AL.
*vs.*
JENKINS.

In the case of Hyde & Goodrich *vs.* Jenkins, pending in the District Court of the first district, the plaintiffs moved the Suprem Court for a rule upon the judge *a quo*, to show cause why a *mandmus* should not issue, commanding him to grant the plaintiffs an order of appeal.

The counsel of the plaintiffs made affidavit, that a motion was made in this cause by the Deputy Attorney General, on whose suggestion it was ordered that plaintiffs show cause, why certain goods belonging to defendant, sequestered by the plaintiffs, and deposited with the clerk of the court, should not be delivered up to the proper agents on the part of the state of New York, who had been authorised to receive the defendant, a fugitive from justice from that state. That on the return of said motion, after argument, the judge of said district court directed the clerk to deliver up the goods to said agents; that the defendant was a fugitive from justice, and that it was considered also necessary to have the goods sent to the state of New York, in order to procure conviction of said Jenkins, charged in that state for a criminal offence. From this decision the plaintiffs prayed to be permitted to appeal to the Supreme Court. The judge declined granting an order of appeal, on the ground that it was a judgment from which an appeal could not be taken.

It appears that Jenkins was under arrest on civil process, at the suit of Hyde & Goodrich, for certain property by them alleged to be stolen from them by him in the city of New York. A sequestration was obtained for a watch alleged to belong to them in the possession of the Mayor of the city of New Orleans, and an attachment was also obtained by which certain property, more particularly certain gold coins found on the person, or in possession of said Jenkins, were ordered to be attached. When the process of attachment in this suit was served on the Mayor he declined giving up the property, and a rule being taken on him to show cause why an attachment should not issue against him for not doing so, and the above facts being made to appear to the satisfaction of the court, the rule

was discharged with instructions to the Mayor not to surrender said property to Jenkins, in case of his discharge; but in such case to hold them subject to the order of the District Court.

On the 19th of March, 1834, on motion of the deputy Attorney General, and on suggesting to the court that a requisition had been made by the Governor of the state of New York, for the person of the defendant, as a criminal who had fled from justice, the court ordered the plaintiffs to show cause on Monday the 24th, why the defendant, who was then in the custdoy of the sheriff, should not be delivered up in pursuance of the said requisition, and the order of the Governor of this state thereon.

This rule came on for hearing before the court on the return day.

After hearing counsel the court ordered the rule to be made absolute. On motion of the deputy Attorney General, it was further ordered, that a writ of *habeas corpus* issue, directed to the sheriff of the parish of Orleans, requiring him to deliver up the peiscn of the defendant, to the commissioners appointed by the Governor of the state of New York, to receive him, in pursuance to the order of the Governor of this state.

On the same day, on motion of the deputy Attorney General, and on suggesting to the court, that the property deposited with the clerk in this case, by the Mayor, was required for the conviction of the defendant, a fugitive from justice; it was ordered that the plaintiffs show cause on the following day why said property should not be delivered up for the purpose mentioned.

On the return of this rule, the court ordered it to be made absolute, and that the property, to wit: a gold watch be delivered up by the clerk.

On the 25th of March, on motion of the deputy Attorney General, it was ordered that the watches, foreign coin, and all the property (with the exception of bank notes, and current coin,) found in the possession of the defendant,

EASTERN DIS.
*May, 1834.*

HYDE ET AL.
*vs.*
JENKINS.

and attached in the hands of the Mayor, at the suit of plaintiffs, be delivered up by the Mayor to the commissioners said watches, coins, &c. being necessary for his conviction. And it was further ordered, that the Mayor continue to hold the bank notes and current coin, attached, subject to the further order of court.

This rule was also made absolute, the court being satisfied of the truth of the matters suggested.

The Judge *a quo* assigned the following reasons for his refusal, to grant the appeal prayed for:

1. Had an application of a similar kind been made by any competent court of the state, for the person of said Jenkins, to try him on a criminal charge, this court would have ordered him, together with property found on him alleged to be stolen, to be delivered up, notwithstanding his being under arrest on civil process, with instruction to retain him in case of his discharge; the right of the state, and the necessity of enforcing criminal justice being paramount to the right of any private individual to arrest said Jenkins on civil process, or to the property stolen.

2. The right of the Governor of New York, to demand and receive him, and also the stolen property necessary to his conviction is also manifest under the constitution of the United States. Where there is presumption of theft, every thing of value found on the thief is presumed to be stolen.

3. The orders of the court in this matter have been executed. Jenkins and the property have been delivered up, and taken to New York, and plaintiffs can take nothing by their intended appeal; the court never considered the property as property within its control. The Mayor left the watch with the clerk to get rid of it.

4. These several orders were made on the motion of the Attorney General, on behalf of the state, contradictorily with attorney of plaintiffs. This was ordered not as a mat-

ter of legal necessity, but expediency; that plaintiffs might take steps to follow the person and property, or perhaps to ask of our executive to have prisoner remanded in case of his acquittal, but there is no party contradictorily with whom an appeal can be taken, as the state is not considered a party to the suit.

5. There is no irreparable injury; the plaintiffs can follow the person and property to New York, at which place plaintiffs' own petition alleges it to have been stolen from them.

6. When these several proceeedings were had, no copy of the warrant of the Governor of Louisiana for the arrest, nor authority of Governor of New York to receive his person, nor copy of process verbal of property found on Jenkins, or his person, was taken or embodied in the proceedings; the plaintiffs' attorney did not require the warrant of the Governor of Louisiana, nor the authority to receive him, which were produced to be copied, and the court did not think it necessary to order it *ex officio,* and therefore no complete record of the matters before the court, when the orders were made, can be made up.

*Carter,* for applicant relied on the following points, in support of his application for the mandamus.

1. The decision of the court below worked an irreparable injury, and hence the plaintiffs were entitled to an appeal. It is no legal answer to be told by the judge below, that inasmuch as we could follow the property which had been sequestered, into the state of New York, that no irreparable injury was done us. An irreparable injury was done, when the act of the judge of the First District Court, placed sequestered property beyond the jurisdiction of the courts of this state, as in this state is the residence of the plaintiffs; and they cannot be compelled to resort to the tribunals of the state of New York, for a recovery of those rights, which may be had before the courts of their own state.

2. The reason assigned by the judge below, that a *mandamus* should not issue to him, "because the property had actually been delivered up, and hence we could obtain nothing by an appeal," is based upon most extraordinary grounds. It would seem then, that if the judge who dissolves orders by sequestrations, attachment, &c., can obtain the obedience of the individual or officers having possession of property thus situated, and have it removed out of the state, these steps afford a good ground to refuse an appeal. This is in direct opposition to the decision of this tribunal, which renders officers responsible for illegal acts. If the order granted in this cause, on an investigation of the merits should be found improper and contrary to law, the individual or officer who has directed it, will be responsible to the plaintiffs, for the loss and damage which such act may cause them.

3. If courts can evade granting appeals from orders dissolving sequestration, on the grounds, urged by the judge of the first district, these writs of sequestration, attachment and provisional seizure will cease to afford to creditors those privileges and rights, which the Code of Practice evidently intends. If a judge can refuse to grant an appeal from his decision, setting aside these orders, on the ground "that the property can be followed into another state, by the party applying for the appeal, and thence no 'irreparable injury' is done to him;" then a definition is given to the term "irreparable injury," as original in its character as it will be important and fatal in its consequences. Such a definition must greatly decrease the appellate duties of this tribunal, and leave that property upon which the law so plainly gives a creditor a provisional lien, at the mercy of dishonest debtors and capricious judges.

4. The judge below contends that we have no right to interfere in the order to deliver up the property; at every stage of the proceedings in reference to a disposition of this property, the plaintiffs appeared and made opposition to it, and on the rule for a delivery of this property to commis-

sioners, on behalf of the state of New York, we were duly Eastern Dis.
notified of the motion, and an agreement took place.    No
objection was then made by the judge of the inferior court,
to the contestation then made by the plaintiffs, and plain-
tiffs believe that this pretence of the court below cannot
avail.

MARTIN, J., delivered the opinion of the court.

On a rule to show cause why a *mandamus* should not
issue to command the judge to allow an appeal from certain
interlocutory orders lately made by him in the case of
*Hyde et al.* vs. *Jenkins*, as prayed by the plaintiffs, he showed
the following causes:

I. The plaintiffs had arrested the defendant on a charge
of his having stolen property of theirs in the city of New
York, and had obtained a writ of sequestration for a watch,
alleged to be part of said stolen property, as well as an
attachment.    The mayor of New-Orleans, in whose office
the watch, as well as a number of gold coins, found in the
possession of the defendant when he was arrested, had been
deposited, refused to deliver them, on a rule taken upon
him why an attachment should not issue against him; but it
appearing that the governor of the state of New York had
required the arrest and surrender of the defendant, who had
been indicted in that state for the theft, and that the pro-
perty stolen and found upon him was to be sent with him in
order to facilitate the discovery of truth at his trial, the rule
was discharged, but the mayor was directed not to surrender
the property to the defendant in case of his being discharg-
ed, but on such an event to retain it till the further order of
the court.

Afterwards the attorney general obtained a rule against
the plaintiffs to show cause why a writ of *habeas corpus*
should not issue to the sheriff for the delivery of the body
of the defendant to the proper persons authorised by the
governor to receive and convey him back.    On cause being

EASTERN DIS.
*April,* 1834.
═══════
HYDE ET AL.
*vs.*
JENKINS.

shown, the rule was made absolute and the writ ordered to be issued.

Subsequently, on the suggestion of the attorney general, that the property found in the possession of the defendant at the moment of his arrest, was required to be used as means of conviction on his trial; and after hearing the plaintiffs' counsel, an order was made for the delivery of it by the mayor, except some bank notes and current coins. From these orders the plaintiffs prayed an appeal, which was refused for the following reasons:

1. Had an application of a similar kind been made by any competent court in this state, the District Court would have ordered the accused and the property alleged to have been stolen, to be surrendered, notwithstanding his body and the property was in the custody of the sheriff under writs obtained in a civil suit, with instructions to retain the body and property, in case of his discharge, so that both might be forthcoming to enforce the plaintiffs' claim; the rights of the state and the necessity of enforcing criminal justice, being paramount to the claim of any individual in a civil action. The right of the executive of a sister state to demand a fugitive from justice, and the property to be produced for the discovery of truth at his trial, is recognised by the constitution of the United States. Where there is a proper charge of theft, valuable property found on or in the possession of the accused, is presumed to have been stolen.

2. The orders of the court from which the appeal has been prayed have been executed, the defendant and property surrendered and are on their way to New York, and no appeal can be available to the plaintiffs. The orders were made on the motion of the attorney general, in behalf of the state, and contradictorily with the plaintiffs. The court considered the property as being within its control, and the orders were made not as a matter of legal necessity, but expediency. The plaintiffs may take steps to follow the prisoner and property, and perhaps ask of the executive of this state to require that the prisoner and property may be remanded, when the circumstances may require it. There

is no party present against whom an appeal may be taken, as the state cannot be considered as a party.

3. There is no irreparable injury done by these orders.

4. No copy of the warrant of the governor of this state for the arrest of the defendant, nor of the application of the governor, nor of the process-verbal of the seizure of the property was taken. The plaintiffs' attorney did not require any, and the court did not think it his duty to require such copies *ex officio*, therefore no record can be made in such a manner as may enable the Supreme Court to revise the decisions from which the appeal is asked.

I. On the first cause shown, it does not appear to us that any thing is there alleged which may have any weight with us. The judge seeks to establish the legality of his decision.

If the consciousness of a judge of the correctness of his decision authorised his withholding his fiat when a party expressed his wish to avail himself of his constitutional right to bring it to a test, it would not be vain to pray for an appeal.

*The judge a quo cannot withhold an order of appeal on the ground of his consciousness that his decision is correct.*

II. The execution of a judgment by the party against whom it is rendered, is indeed an obstacle to his obtaining an appeal from it. But although through his inability to obtain security the judgment may have been executed, he may, if he judges it for his interest to prevent the execution against him from passing *in rem judicatam*, claim an appeal.

*Although a party, against whom a judgment has been rendered, is unable to give security to prevent its execution, he may claim an appeal, if he judges it for his interest to prevent the decision against him from passing in rem judicatam.*

III. In order that an intercolutory judgment may be appealed from, the party must indeed show that it was an irreparable injury; but the irreparability need not be an absolute one. It suffices us to tell such as would be irreparable by the final judgment on the action of this court on that judgment. Here, after the interlocutory order had destroyed the plaintiffs' hold on the body of the debtor, and on the property secured or attached, no judgment of the first court nor of this could replace him on the schedule, he was before the judgment against which he seeks relief, and this

*To entitle a party to an appeal from an interlocutory judgment, it is unnecessary that the injury be absolutely irreparable. It suffices if it be such as would be irreparable by the final judgment or the action of the Supreme Court on that judgment.*

*An interlocutory decree may be appealed from which discharges*

EASTERN DIS.
*April*, 1834.

HYDE ET AL.
*vs.*
JENKINS.

the plaintiff's hold on the body of the debtor and on the property sequestered or attached.

If an appeal be claimed within the legal delay, the judge *a quo* cannot refuse to allow it, because the judgment was rendered by his predecessor, who had died without making a statement of facts.

suffices to authorise him to forbear the exercise of his right of appeal till after the final judgment of the cause.

IV. The death of the judge who had rendered a judgment before he may have made a statement of facts, in many instances would prevent an appellant from obtaining one of the legal means of bringing the case before us for examination; still, the judge succeeding to the former, could not, on that account, deny an appeal claimed within the legal time.

None of the causes shown authorises us to withhold the *mandamus*, we have doubted whether the present case be a civil one, and whether there be a proper party contradictorily with or how the reversal of the orders complained of may be sought.

If the attorney general or the person sent by the governor of New York to claim the fugitive, after having obtained the warrant of our executive, had applied for an *habeas corpus* to a competent judge at chambers or in court, on the refusal of the officer having the custody of the body of the fugitive, the matter would perhaps have been of a criminal or political nature, and the decision of the judge on the return of the *habeas corpus*, would not have been examinable in this court, according to the principles laid down in the case of *Laverty* vs. *Duplessis*, 3 *Martin*, *p*. 42.

On an application for the writ of *habeas corpus*, the decision of the judge upon matters of a criminal or political nature is not examinable in the Supreme Court.

But the writ of *habeas corpus* may be used in civil as well as in criminal and political cases. A tutor deprived of the custody of his ward, or a husband of the company of his wife, may seek a restoration to their rights by a recourse to a writ of *habeas corpus*; so may a debtor, illegally confined in a civil case. If, then, the decision be erroneous, there is nothing of what fell from the court in Laverty's case, that will operate against the right of the injured party of having the decision of the first judge reversed on an appeal.

The writ of *habeas corpus* may be issued in civil as well as in criminal and political cases.

Here the applicant for a *mandamus* shows that he instituted a civil action against his debtor, whose body was arrested and imprisoned for want of bail; that property on which he claimed some right was sequestered and attached; that the officers of the state thought it for its interest that it should

intervene in the suit, demand contradictorily, and make the plaintiff surrender the debtor and property. It called on the plaintiff to declare his reasons for insisting on the detention of both. The District Court has sustained the claim of the state, and deprived the plaintiff of the security he was in possession.

We are not ready to say that the decision of the court is not a judgment in a civil suit; the plaintiff contends it is, and must have the right of testing his pretentions contradictorily with the party who has obtained a judgment disregarding them.

Let the *mandamus* issue as prayed for.