## No. 12,661.

BAYNE & ONORATO VS. ANGELO CUSIMANO, DOING BUSINESS UNDER THE NAME OF G. GRANDE & CO.

### ON MOTION TO DISMISS APPEAL.

Motion was made to dismiss the appeal on the ground that the order dismissing the writ of attachment was interlocutory and did not work irreparable injury. That the appeal should not be heard prior to an appeal on the merits of the cause.

*Held :* The judgment was in nature final enough to sustain an appeal, and that an appeal may be taken from an interlocutory order which dissolves an attachment and releases plaintiff's grasp on the property attached.

Unquestionably plaintiff has the right to be heard on appeal in matter of the decree dissolving the attachment.

The only question is prematurity, *vel non;* there being a necessity, if the attachment issued properly, of preserving a right exposed to loss, the appeal is not premature.

### ON THE MERITS.

Question presented: Can an individual member of a copartnership become surety on an attachment bond executed by his firm as principal? Is he such surety as the law contemplates on a bond of that character?

*Held :* He is not competent as surety.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

*Hughes & Favrot* for Plaintiffs, Appellants.

*E. A. O'Sullivan* and *E. Howard McCaleb, Jr.*, for Defendant, Appellee.

Submitted on motion to dismiss November 29, 1897.
Opinion handed down December 13, 1897.
Argued and submitted on the merits March 10, 1898.
Opinion handed down March 21, 1898.

The opinion of the court was delivered by

### ON MOTION TO DISMISS THE APPEAL.

BREAUX, J. After the trial on a rule to dissolve the writ of attachment which had been issued, a judgment was rendered dissolving the writ of attachment.

A suspensive appeal was taken to this court from the judgment of the District Court.

In this court the defendant and appellee moved to dismiss on the ground that no appeal lies from an interlocutory order dissolving the writ of attachment, and that the interlocutory order dissolving the attachment does not cause plaintiffs any irreparable injury.

On the trial of the rule the facts upon which the plaintiffs rested to sustain their attachment were made to appear in evidence.

On the other hand, the defendant contended against the position of plaintiff in attachment and introduced his evidence.

The suit in so far as relates to the attachment was tried upon its merits and the rights involved in the controversy were determined adversely to the plaintiff.

The merits of the cause were not placed at issue; the rule filed was a preliminary proceeding in the case and the judgment on the rule was interlocutory; nevertheless the decision may have included a right of as great importance as any which can possibly be involved on the final decision.

The judgment dissolving an attachment, placed at issue as this was, may be considered, in some respects, at least, as in the nature

of a final decree. The issues had been as related to the attachment passed upon by the District Court. The judgment did not have the effect of dismissing the personal action, yet it brought to a close and terminated the possibility of recovering anything on the property which had been attached. Moreover, if the plaintiff were to gain his suit for the amount he claims, there would be no object in appealing from the judgment in his favor in the personal action. He would have the right to appeal from the judgment, dissolving the writ of attachment, although nothing done since the date of the judgment, could add to the finality of the judgment dissolving the attachment.

In an early case this court held that an appeal lies from a discharge of a garnishee in an attachment case. The facts may not be quite similar between the case before us and the case to which we refer; the principle is in the main the same. Laverty vs. Anderson, 4 M. 606. In Hyde *et al.* vs. Jenkins, 6 La. 427, it was held that an interlocutory judgment which releases the property from attachment may be appealed from.

Upon another ground it strikes us the appeal should be sustained.

The property attached was released, and it is held by a third person, by whom it was bonded as being his own. His right as owner can not be questioned on the trial before the District Court in the present condition of the case, even if he be not the owner. The judgment dissolving the attachment is binding on all concerned until it be reversed on appeal, if reversible.

If a plaintiff in attachment has any right at all he should have the right to hold the property attached (or its equivalent in case it has been bonded) until the decision of the case. Here the property was released and the bond canceled by the effect of the decision dissolving the attachment.

A similar question, in our view, was decided in Laverty vs. Anderson, 4 M. 606. The court held that the order discharging the garnishee was so far final that an appeal lies.

A similar view was announced in Hyde vs. Jenkins, 6 La. 427.

In view of the foregoing we think the appeal should be heard, and the motion to dismiss refused.

It is ordered and adjudged that the motion to dismiss the appeal filed in this case be refused.

Bayne & Onorato vs. Angelo Cusimano.

## ON THE MERITS.

BLANCHARD, J. Plaintiffs brought suit against defendant, accompanied by attachment and garnishment proceedings.

Defendant took a rule to dissolve the attachment on several grounds, among them that the attachment bond is illegal, insufficient, and not such as the law requires, and that the surety thereon is not such as the law contemplates.

From a judgment dissolving the attachment plaintiffs appeal.

The attachment bond is signed by Bayne & Onorato, as principals, and by T. L. Bayne as surety.

The "T. L. Bayne" who signs as surety is one of the partners of the firm of Bayne & Onorato.

The question presented is: Can an individual member of a copartnership become surety on an attachment bond executed by his firm as principal? Is he such security as the law contemplates on a bond of that character?

It is shown that the firm name was signed to the bond by Onorato, the junior member, while Bayne, the senior, signed it as surety in his individual capacity.

Because Onorato, and not Bayne, signed the name of the firm to the bond as principal, can make no difference.

If Bayne, individually, were legally competent as surety, he would be so even though he himself had already signed the firm name as principal.

It is claimed that Bayne & Onorato are an ordinary, and not a commercial, partnership, and from this it is contended that as each partner is bound only for his share of the obligation of his bond, that is to say, for one-half thereof, nothing prevents one of the partners from becoming surety for his copartner to the extent of the latter's liability on the bond.

While, from the testimony found in the record touching the character of the business done by the firm, we are by no means satisfied this partnership is to be classed merely as an *ordinary* one, in our appreciation of the question under consideration it makes no difference whether the obligation of the partners on the attachment bond be solidary, or each for his share only.

Bayne & Onorato—the two as one principal, whether viewed as

ordinary or commercial partners—are required by law to give as surety on their attachment bond " one good and solvent person." While it is true, in a sense, that a partnership is a legal entity, distinct from the individual members, comprising it, there can be no doubt that its several members, as well as the partnership itself, must be viewed as principals on an attachment bond signed in the firm name for the purpose of taking out an attachment at the suit of the firm. .

And the extent of the individual liability of its members for the obligations of the partnership does not affect this.

Mr. Bayne, then, is a *principal* in the attachment obligation.    He is bound on the bond in that character.  How can he be both principal and surety at one and the same time in the same obligation and for the same liability?

In this connection the view that would make of this partnership *a third person* in its relationship to the individual members thereof is a mistaken one.

If we admit that Bayne & Onorato are an ordinary partnership, and that Bayne's liability on the bond is that of ordinary partner only, would the case be different?  Conceding that he is a competent surety for the part of the obligation for which Onorato is bound, then we would have a surety for one-half of the bond only.   There is no surety as to Bayne's part, and the bond would not meet the requirement of the statute, which stipulates that it must be for a sum equal to that which the creditor claims. This means, of course, that the suretyship of the bond must cover the whole amount for which the bond calls. If it be given for only one-half, the bond fails to measure up to the legal standard.

The very definition of suretyship is that it is an accessory promise by which a person binds himself for *another* already bound.   C. C. 3035.

What *other* has bound himself for Bayne on this attachment bond? What suretyship has he for the obligation of the bond, whether the whole of it or part of it, resting upon him as principal?  None whatever.

We hold, therefore, that Bayne, one of the partners in the creditor firm suing out the attachment, is to be viewed as a principal in the attachment bond, and, being such, could not become surety on the

same bond. As he was the only security, the bond is not such as the law contemplates and the attachment was rightfully dissolved.

Judgment affirmed.

BREAUX, J., dissenting.