GAIDRY, J.
 

 |2An interdict, through her personally-retained counsel, appeals a judgment of full interdiction, and also challenges a judgment awarding her counsel attorney fees and costs in amounts less than billed and requested. For the following reasons, we affirm in part and reverse and render judgment in part.
 

 FACTUAL AND PROCEDURAL HISTORY
 

 Mabel Sharp DeMarco
 
 [1]
 
 is an elderly resident of the City of Houma in Terre-bonne Parish. She was divorced and lived alone in a large, three-story home for many years. She has one child, Cheryl DeMarco Olsen, who lived next door to her. Following Mrs. DeMarco’s divorce, her relationship with her daughter deteriorated because of her daughter’s closeness to her ex-husband, and she and her daughter gradually became estranged. Mrs. De-Marco came to rely upon friends and neighbors to assist her in managing her finances and property, which included large amounts of cash kept in her home.
 

 On March 27, 2008, Mrs. DeMarco’s grandson, Lloyd E. Olsen, Jr., filed a petition for her interdiction. He alleged that she was then 80 years old, did not understand the consequences of her actions, and was unable to make reasoned decisions and to care for herself and her property by reason of senility or dementia. He also alleged a fear that others may have been taking advantage of her and stealing from her. Mr. Olsen sought his appointment as curator and appointment of his mother, Mrs. Olsen, as undercurator.
 

 On April 1, 2008, Mrs. DeMarco executed an “Agreement for Legal Services,” retaining the Block Law Firm for the stated purposes of ^representing and advising her “in connection with an interdiction proceeding.” The contract provided that the attorney would be paid $300.00 per hour for his services, and that the services of non-attorney employees would be billed at lesser amounts to be determined by the attorney. Mrs. DeMarco also paid an advance deposit of $10,000.00 toward the fees and expenses.
 

 Following a report of self-neglect initiated by the Terrebonne Parish Sheriffs office, prompted by a mistaken report of burglary at Mrs. DeMarco’s home, an emergency certificate pursuant to La. R.S. 28:53 was issued on April 16, 2008 at the request of an investigator for the Governor’s Office of Elderly Affairs, and Mrs. DeMarco was hospitalized at Oceans Behavioral Hospital in Broussard, Louisiana from April 17 through April 30, 2008. Upon her discharge from that hospital, Mrs. DeMarco’s grandson and daughter placed her in an assisted living facility, Terrebonne House, in Houma.
 

 Mrs. DeMarco, through her retained counsel, filed her answer on May 6, 2008, denying the allegations of her incapacity.
 
 *422
 
 She further alleged that since the filing of the petition, she had been moved by Mr. Olsen to Terrebonne House against her will.
 

 On May 20, 2008, Mr. Olsen filed a motion for an expedited trial, and on the same day the trial court signed an order fixing trial for June 3, 2008.
 

 On May 21, 2008, Mr. Olsen filed a motion for temporary interdiction, alleging that because of her dementia, immediate and irreparable injury, loss, or damage would result to Mrs. DeMarco’s person or property before a hearing could be held. The motion’s allegations were supported by the affidavits of two physicians and Mr. Olsen’s counsel. It was further alleged that following the issuance of the emergency certificate band her later placement in an assisted living facility, Mrs. DeMarco’s retained counsel “twice removed her from the facility without her families’ [sic ] consent and against the wishes of the facility.” On the same date, the trial court signed a judgment of temporary interdiction, placing Mrs. DeMarco under a temporary full interdiction, fixing a hearing on a preliminary interdiction for June 3, 2008, to be heard contemporaneously with the trial on the merit s, and appointing Mr. Olsen and Cheryl Olsen as interim curator and un-dercurator respectively. The security to be provided by the curator during the temporary interdiction was fixed at $5,000.00, and a bond in that amount, executed by Mr. Olsen and Mrs. Olsen as sureties, was executed and filed on May 22, 2008.
 

 On June 2, 2008, Mrs. DeMarco, through her retained counsel, moved to continue the trial on the merit s, alleging that Mr. Olsen had restricted her access to her counsel and that a material witness was unavailable for trial. The trial was continued, and the trial court issued an order maintaining the order of temporary interdiction pending trial.
 

 On September 19, 2008, Mr. Olsen filed a motion for approval of attorney fees and costs. The motion was heard on October 15, 2008 and judgment granting the motion and awarding attorney fees of $9,255.00 and costs of $2,620.63 was signed on October 16, 2008.
 

 After being continued on two more occasions, the trial on the merits was eventually held on October 20, 2008. By the time of trial, Mrs. DeMarco had been placed in another assisted living facility, located closer to her home and that of her daughter. At the conclusion of trial, the trial court ruled that a full interdiction was warranted, and ordered the filing of a detailed descriptive list of Mrs. Demarco’s assets pursuant to La. C.C.P. art. 4563(B).
 

 |5On November 12, 2008, Mrs. DeMarco filed a motion for approval of her retained counsel’s attorney fees and costs. On December 16, 2008, Mr. Olsen filed a second motion for approval of attorney fees and costs, and both motions were eventually fixed for hearing on January 9, 2009.
 

 On December 30, 2008, the trial court, on motion of Mr. Olsen as temporary curator, appointed another attorney as counsel for Mrs. DeMarco, in effect discharging Mrs. DeMarco’s retained counsel. On that date, the trial court also ruled that Mr. Olsen’s counsel was entitled to inspect certain confidential, detailed time records that Mrs. DeMarco’s retained counsel had submitted for
 
 in camera
 
 inspection in connection with her motion for approval of attorney fees and costs. Mrs. DeMarco’s counsel immediately applied for supervisory writs to this court.
 

 The trial court signed its final judgment of interdiction, prepared by Mr. Olsen’s counsel, on January 14, 2009, ordering a full interdiction of Mrs. DeMarco and ap
 
 *423
 
 pointing Mr. Olsen as her curator. However, that judgment did not fix the amount of the required security to be furnished by the curator. Accordingly, Mr. Olsen submitted a motion to fix the amount of the curator’s bond, and the trial court signed an order on January 16, 2009, fixing the bond at $435,000.00. A bond signed by Mr. Olsen and Mrs. Olsen as “sureties
 
 in solido
 
 ” for Mr.Olsen was signed on February 4, 2009 and filed on February 9, 2009.
 

 On March 4, 2009, this court granted the writ application, holding that the record showed that the appointed curator and undercurator had failed to qualify as such and that Mr. Olsen had no authority to discharge Mrs. DeMarco’s retained counsel. Accordingly, we vacated the trial court’s order appointing the other attorney. We further reversed the trial court’s ruling ordering the release of the confidential billing records, and remanded the | ^matter for further proceedings.
 
 [2]
 
 Following remand, the trial court on March 17, 2009 awarded Mrs. DeMarco’s counsel $22,985.00 in attorney fees and $8,726.66 in costs, subject to credit for amounts previously paid, which were sums less than the amounts she had requested. On April 17, 2009, the trial court signed a judgment awarding Mr. Olsen $7,535.00 in attorney fees and $1,313.00 in costs.
 

 Mrs. DeMarco appeals both the final judgment of interdiction and the judgment of March 17, 2009 on her motion for attorney fees and costs.
 

 ASSIGNMENTS OF ERROR
 

 Mrs. DeMarco, through her retained counsel, assigns the following errors on the part of the trial court:
 

 1. Under the circumstances, the district court erred when it signed a proposed judgment that had not been circulated to opposing counsel prior to its presentation to the presiding judge.
 

 2. The district court failed to apply the appropriate burden of proof.
 

 3. The district court erred in ordering a full interdiction, which gave the curator full power over the defendant’s assets as well as her living arrangements, when “less restrictive means” were clearly available.
 

 4. The curator is without authority to perform any acts for the defendant since he and the undercuratrix failed to post the required bond.
 

 5. The district court erred when it denied full payment of legitimate and documented attorneys’ fees and costs to defendant’s counsel.
 

 DISCUSSION
 

 Failure to Comply with Louisiana District Court Rule 9.5
 

 Mrs. DeMarco initially assigns as error the trial court’s execution of the final judgment of interdiction, given the failure of Mr. Olsen’s counsel to |7comply with the requirements of Rule 9.5 of the Louisiana District Court Rules. Rule 9.5 provides, in pertinent part, that a proposed judgment submitted to a judge after its rendition must be circulated by the responsible attorney or party to all other attorneys or parties at least three working days before its presentation to the judge, in order to allow the other attorneys or parties to comment upon its content. Such a proposed judgment must also contain a certificate verifying its delivery to the other
 
 *424
 
 attorneys or parties and stating whether any opposition was received. It is undisputed that the final judgment of interdiction failed to comply with the requirements described above.
 

 Mrs. DeMarco, through her retained counsel, argues that Mr. Olsen’s failure to comply with Rule 9.5 warrants reversal of the judgment of interdiction. Mr. Olsen emphasizes that despite noncompliance with the letter of Rule 9.5, the judgment submitted to and signed by the trial court conformed to its oral ruling and the relevant substantive law.
 

 We agree with Mr. Olsen that the judgment submitted fully comports with the trial court’s factual findings and oral reasons. Although we find the failure to comply with Rule 9.5 troubling, particularly in light of its occurrence during Mr. Olsen’s unsuccessful attempt to discharge Mrs. DeMarco’s counsel of choice, we conclude that the trial court’s error constituted harmless error.
 
 See Lewis v. ODECO, Inc.,
 
 07-0497, pp. 4-6 (La.App. 4th Cir.4/8/09), 12 So.3d 863, 368-69,
 
 writs denied,
 
 09-1386 (La.10/10/09), 19 So.3d 463, 09-1425 (La.10/16/09), 19 So.3d 479,
 
 cert. denied,
 
 — U.S.-, 130 S.Ct. 1705, 176 L.Ed.2d 183 (2010). This assignment of error has no merit.
 

 IsFull versus Limited Interdiction and the Burden of Proof
 

 Mrs. DeMarco, through her retained counsel, contends that the trial court committed legal error in not applying the standard of proof by “clear and convincing evidence,” and that it was clearly wrong in ordering a full interdiction, rather than ordering less restrictive means of protecting her interests.
 

 A court may order the full interdiction of a natural person of the age of majority, or an emancipated minor, who due to an infirmity, is unable to make reasoned decisions regarding the care of his person and property, or to communicate those decisions, and whose interests cannot be protected by less restrictive means. La. C.C. art. 389. Full interdiction is a last resort and, as a result, is warranted only when a person’s interests cannot be protected by less restrictive means, such as limited interdiction or a procuration, mandate, or trust. La. C.C. art. 389, Revision Comments—2000, (e).
 

 If a person is consistently unable to make reasoned decisions regarding the care of both his person and his property, or to communicate those decisions, he is a candidate for full interdiction. La. C.C. art. 390, Revision Comments—2000, (b). A person is unable to consistently make reasoned decisions if, for example, he suffers from an infirmity that intermittently deprives him of reason. A person who experiences periodic deprivations of reason can inflict substantial harm to himself or his property during such bouts and is a candidate for full interdiction. In short, that a person suffering from an infirmity may experience lucid intervals does not render him ineligible for full interdiction. La. C.C. art. 389, Revision Comments—2000, (d).
 

 |9The petitioner in an interdiction proceeding bears the burden of proof by clear and convincing evidence. La. C.C.P. art. 4548. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence.
 
 Succession of Fisher,
 
 06-2493, p. 9 (La.App. 1st Cir.9/19/07), 970 So.2d 1048,1054.
 

 The trial court may accept or reject, in whole or in part, uncontradicted opinions expressed by an expert as to ultimate facts, based upon the other evidence admitted at trial.
 
 See La. State Bar Ass’n v. Carr & Assoc., Inc.,
 
 08-2114, p. 17 (La.
 
 *425
 
 App. 1st Cir.5/8/09), 15 So.3d 158, 171,
 
 writ denied,
 
 09-1627 (La.10/30/09), 21 So.3d 292, and
 
 Harris v. State ex rel. Dep’t of Transp. & Dev.,
 
 07-1566, p. 25 (La.App. 1st Cir.11/10/08), 997 So.2d 849, 866,
 
 writ denied,
 
 08-2886 (La.2/6/09), 999 So.2d 785.
 

 Samir Salama, M.D. attended Mrs. De-Marco during her hospitalization and evaluation at Oceans Behavioral Hospital. His affidavit and the certified hospital records were introduced into evidence at trial. In his affidavit, Dr. Salama attested that Mrs. DeMarco was suffering from “[m]ajor depression, recurrent severe, with psychotic features and dementia, early stages.” He confirmed that she was “unable consistently to make reasoned decisions regarding the care of her person or property, or any aspect of either,” and that she required supervision regarding “taking medication, eating, bathing, and all aspects of daily activities.” Dr. Salama further stated that Mrs. DeMarco required “24 hour nursing supervision.” Although the hospital records document significant improvement in Mrs. DeMarco’s functional abilities by the time of her discharge, such improvement was clearly attributable to the hospital environment, and Dr. Salama’s discharge prognosis for her was “poor.”
 

 ImRussell Henry, M.D., a specialist in internal medicine, was Mrs. DeMarco’s treating physician, and testified at trial. His testimony documented Mrs. DeMar-co’s noncompliance with medical advice in 2007, as well as the fact that she was utilizing the services of sitters at home at that time. Dr. Henry also treated her following her discharge from Oceans Behavioral Hospital, and his diagnosis of her condition concurred with that of Dr. Sala-ma. He also expressed the opinion that Mrs. DeMarco was actively trying to conceal her dementia. As of the time of trial, he felt that she would not be able to cook for herself, bathe herself, manage her personal finances, live alone, or consistently make reasonable decisions regarding her personal care. On cross-examination, Dr. Henry admitted that Mrs. DeMarco’s dementia was in its early stages and could not be characterized as “profound,” but he emphasized that, in his opinion, she was “profoundly disabled.” He conceded that if she had 24-hour sitters capable of managing her meals, health needs, and personal finances, she could live at home rather than in an assisted living facility.
 

 Mrs. DeMarco, through her retained counsel, contends that the trial court erred in not allowing her to remain in her home with sitters, rather than allowing her to be placed by Mr. Olsen in an assisted living facility, as her treating physician did not preclude such an arrangement in his testimony. We disagree. The issue of whether alternate, less-restrictive living arrangements, consistent with an interdict’s expressed desire for some independence, might be medically and economically feasible or possible is not ultimately conclusive as to the issue of whether full or limited interdiction is appropriate.
 

 We note that former La. C.C.P. art. 4555 authorized the trial court to “order that an interdict be attended in his own home, in a hospital, or in any Inother place, within or -without the state, taking into consideration the nature of his incapacity and the value of his property.” But the foregoing language was in effect repealed, being omitted from the reenactment of the codal articles on interdiction effective July 1, 2001. Acts 2000, 1st Ex. Sess., No. 25, § 3. Now, when a full interdiction is ordered, the law leaves the decision as to the interdict’s living arrangements to the curator, and the trial court is not required to make any decision regarding such arrangements.
 
 See
 
 La. C.C.P. arts. 4566(A) and 4569.
 

 
 *426
 
 Dr. Henry’s expert medical testimony regarding the ultimate issue of whether full interdiction was warranted was unequivocal and corroborated by the other medical evidence. The trial court in its oral reasons expressly accepted that testimony. The determination of whether to order interdiction is a factual finding, which cannot be set aside in the absence of manifest error or a clearly wrong determination.
 
 State ex rel. Smith,
 
 38,912, p. 6 (La.App. 2nd Cir.3/3/04), 867 So.2d 890, 894. As there are two permissible views of the evidence, requiring an assessment of the credibility of the witnesses and the weighing of the evidence, the trial court’s determination is entitled to deference and cannot be considered manifestly erroneous.
 
 See Stobart v. State through Dept. of Transp. and Dev.,
 
 617 So.2d 880, 883 (La. 1993). In short, the evidence introduced at trial meets the requisite standard of being clear and convincing, and fully supports the trial court’s determination that full interdiction of Mrs. DeMarco was appropriate. That the trial court did not specifically address the burden of proof by clear and convincing evidence in its oral reasons does not warrant reversal, as we find that the burden was in fact met by Mr. Olsen. These assignments of error also have no merit.
 

 |
 
 ^¡Attorney Fees and Costs of the Interdict’s Retained Counsel
 

 Louisiana Code of Civil Procedure article 4560 provides that “[t]he court may render judgment for costs and attorney fees, or any part thereof, against any party, as the court may consider fair.” We interpret the term “fair” as synonymous with “reasonable,” the usual standard employed by our courts in considering attorney fees.
 
 See Merriam-Webster’s Collegiate Dictionary
 
 1037 (11th ed.2008).
 

 The billing statements provided by Mrs. DeMarco’s counsel evidence that he charged her for 130.9 hours of his time, at $300.00 per hour, and 39.8 hours at $75.00 per hour for the law firm’s nurse-paralegal.
 
 [3]
 
 Examining the detailed time records and fee amounts documented in the record, it is apparent that the trial court most likely fixed the total fee for attorney time at $23,000.00, and accepted the nurse-paralegal’s time at $2,985.00 as billed, for a total attorney fee of $25,985.00.
 
 [4]
 

 A full interdict lacks capacity to make a juridical act, such as a contract, but a juridical act by an interdict is a relative nullity. La. C.C. art. 395, Revision Comments^ — 2000, (b), (d). Interdiction does not affect the validity of a juridical act made by the interdict prior to the effective date of interdiction. La. C.C. art. 394. A judgment of interdiction has effect retroactive to the date of the filing of the petition for interdiction. La. C.C. art. 396. Here, Mrs. DeMarco did not retain counsel to contest her interdiction until after the petition for interdiction was filed and served upon her. Thus, the contract for legal services between Mrs. DeMarco and her retained counsel was executed
 
 after
 
 the effective date of her interdiction. It |13is necessary for us to consider whether the contract was valid and had legal effect under these circumstances.
 

 The presumption is that all persons have the capacity to contract, except unemanci-pated minors, interdicts, and persons de
 
 *427
 
 prived of reason at the time of contracting. La. C.C. art. 1918;
 
 Florida v. Stokes,
 
 05-2004, pp. 6-7 (La.App. 1st Cir.9/20/06), 944 So.2d 598, 603. A contract made by a person without legal capacity is relatively null and may be rescinded only at the request of that person or his legal representative. La. C.C. art. 1919. A noninter-dicted person, who was deprived of reason at the time of contracting, may obtain rescission of an onerous contract upon the ground of incapacity only upon showing that the other party knew or should have known that person’s incapacity. La. C.C. art. 1925. In this case, neither Mrs. De-Marco nor Mr. Olsen has ever instituted a separate action to rescind her retained counsel’s contract for legal services.
 

 If read literally, La. C.C. art. 396 would have the potential effect of invalidating any contract between an interdict and an attorney by which the interdict sought legal representation to respond to a petition for interdiction, if a judgment of interdiction is later rendered. Such an interpretation obviously might have a deterring effect upon the efforts of a defendant in an interdiction proceeding to obtain representation to contest interdiction, and would run counter to the longstanding law of our state mandating legal representation of defendants in interdiction proceedings. That a defendant in an interdiction proceeding has the right to retain his own attorney of choice is confirmed by reference to the pertinent codal articles.
 
 See
 
 La. C.C.P. arts. 4544 and 4549(C). Thus, the mere fact that the defendant in an interdiction action retains counsel subsequent to its filing date, the retroactive date of a 1 ^judgment of interdiction, does not of itself operate to nullify the attorney-client agreement.
 

 Courts are vested with the responsibility of both monitoring and analyzing the attorney-client relationship, even when it is based on a written contract between the parties.
 
 Gold, Weems, Bruser, Sues & Rundell v. Granger,
 
 06-859, p. 3 (La.App. 3rd Cir.12/29/06), 947 So.2d 835, 839,
 
 writ denied,
 
 07-0421 (La.4/27/07), 955 So.2d 687. However, that responsibility must be tempered with restraint, especially when the parties have signed a contract that memorializes the terms of their agreed-upon relationship.
 
 Id.,
 
 06-859 at p. 6, 947 So.2d at 841. The courts should not be in the business of setting fees.
 
 Drury v. Fawer,
 
 590 So.2d 808, 810 (La.App. 4th Cir.1991),
 
 writ denied,
 
 592 So.2d 1304 (La. 1992). A reduction in attorney fees must be predicated upon a factual finding that the excessive fee amount was never earned.
 
 See Drury,
 
 590 So.2d at 811. Otherwise, absent a showing that the fee charged was clearly excessive, a contractual relationship between an attorney and client should not be altered.
 
 Salsbury v. Salsbury,
 
 27,062, p. 6 (La.App. 2nd Cir.6/21/95), 658 So.2d 734, 738-39. That is, unless the provisions of an attorney-client contract produce an excessive, unearned, or incommensurate fee according to the factors set forth in Rule 1.5(a) of the Louisiana State Bar Association Rules of Professional Conduct, the fee charged must be considered reasonable and enforceable.
 
 See Moody v. Arabie,
 
 498 So.2d 1081, 1083 (La.1986).
 

 While a court has considerable discretion in fixing a reasonable attorney fee, such discretion is not unbridled, and cannot be exercised to invalidate or modify an otherwise reasonable fee charged pursuant to a valid contract for legal services between consenting parties. In other words, a court does not possess the discretion to alter an attorney fee that is not | lsclearly excessive on the grounds that it considers a lesser fee as more “reasonable” or “fair.” It must first be demonstrated by a preponderance of the evidence
 
 *428
 
 that an attorney fee is not reasonable, or clearly excessive, before a court may exercise its discretion in fixing a reasonable fee under the circumstances. Accordingly, an appellate court must use the “clearly wrong” or “manifestly erroneous” standard of review in considering a trial court’s factual findings relating to the reasonableness of a contractual attorney fee.
 
 Teche Bank & Trust Co. v. Willis,
 
 93-732, p. 5 (La.App. 3rd Cir.2/2/94), 631 So.2d 644, 647. The “abuse of discretion” standard of review would apply to appellate review of an
 
 amount
 
 awarded by a trial court as a reasonable fee after a finding that a contractual fee was clearly excessive, or an
 
 amount
 
 awarded pursuant to statutory authority.
 
 Id.
 

 At the hearings on the motion for approval of attorney fees, Mr. Olsen’s counsel argued that a bill for attorney fees and costs of over $50,000.00 for representation of the defendant in a “simple” interdiction was “excessive,” and that the attorney-client contract between Mrs. DeMarco and her counsel should be “thrown out” on the grounds that “$300.00 is not the customary [hourly] rate here.” But no actual testimony or other evidence on “the fee customarily charged in the locality for similar legal services” was presented at the hearing.
 
 [5]
 
 Mr. Olsen’s counsel emphasizes the facts that the hourly rate charged by Mrs. DeMarco’s counsel was twice that charged to Mr. Olsen, and that the total bill for fees and expenses was over three times that charged by and awarded to his counsel. We find such a comparison unpersuasive. The separate attorney fee arrangement of one party in litigation, while arguably relevant to some limited extent in some cases, does not constitute a benchmark for judicial determination of the reasonableness |1fior excessiveness of the opposing party’s attorney fee, as there are numerous subjective factors (such as an attorney’s skill, experience, and reputation) that may make such a comparison unfair.
 

 Mr. Olsen contends that the failure of Mrs. DeMarco’s counsel to call as a witness at trial a neuropsychologist retained to examine Mrs. DeMarco bears upon the value of his services to his client. While Mrs. DeMarco’s counsel evidently made a tactical decision not to call the examining neuropsychologist, that decision does not mean that his efforts to arrange the examination were not undertaken with his client’s best interests in mind, consistent with her expressed wishes and competent legal representation.
 

 Based upon our careful review of the evidence relating to the issue of the attorney fees, weighed in light of the relevant factors bearing upon their reasonableness, we conclude that the trial court was clearly wrong in determining that the fees and expenses billed by Mrs. DeMarco’s retained counsel were not earned or were clearly excessive under the terms of the contract for legal services. The professional experience, skill, and other qualifications of Mrs. DeMarco’s retained counsel were not seriously challenged, and the legal services provided are documented in detail in the law firm’s billing statement and time records and supported by the evidence and the record of this matter. We accordingly reverse the judgment reducing the billed attorney fee and awarding a reduced fee of $25,985.00 and costs and expenses of $8,726.66, and render judgment awarding Mrs. DeMarco’s retained counsel the full amount of $42,255.00 for attorney fees and $9,408.77 for costs and expenses as provided by the contract for legal services.
 

 
 *429
 

 117Qualification of Curator and Undercurator
 

 This issue does not relate to any factual or legal error in the judgments appealed, and was not presented to the trial court for determination. Our jurisprudence has a longstanding general rule that issues not submitted to the trial court for decision will not be considered for the first time on appeal.
 
 ASP Enterprises, Inc. v. Guillory,
 
 08-2235, p. 9 (La.App. 1st Cir.9/11/09), 22 So.3d 964, 971,
 
 writ denied,
 
 09-2464 (La.1/29/10), 25 So.3d 834.
 
 See also
 
 Uniform Rules of Louisiana Courts of Appeal, Rule 1-3. However, because of the importance and indirect relevance of this issue to other issues in this appeal, and because we addressed it in our prior writ decision,
 
 [6]
 
 we conclude that the interest of justice requires us to address it again.
 

 The duties and powers of a curator commence upon his qualification. La. C.C. art. 392. Louisiana Code of Civil Procedure article 4562(A) provides that “[t]he person appointed qualifies as curator upon furnishing the security required by law
 
 and
 
 taking an oath to discharge faithfully the duties of his office.” If the person appointed as curator fails to so qualify within ten days of his appointment, the court may revoke the appointment, unless the court extends the delay period. La. C.C.P. art. 4562(B). The person appointed as curator is required to furnish security. La. C.C.P. art. 4563(A). The person appointed as undercurator, on the other hand, is not required to furnish security, and qualifies upon taking an oath. La. C.C.P. art. 4565(A)(1).
 

 The security provided by the curator must be in the form of a bond of the same nature as that required of a minor’s tutor under La. C.C.P. art. 4132(A). La. C.C.P. art. 4563(A). Three forms of bond are permitted: (1) a [18bond secured by an authorized surety company; (2) a bond secured by government bonds, insured certificates of deposit in financial institutions, or shares of insured building or loan or homestead associations; or (3) a bond secured by at least two personal sureties signing
 
 in solido,
 
 each owning unencumbered property in excess of the required amount. La. C.C.P. art. 4132(A).
 

 Mr. Olsen filed a “Bond for Curator Secured by Two Sureties” on February 9, 2009. In that bond, as well as in his prior bond as temporary or interim curator, Mr. Olsen is described in the dual capacity of “curator” (principal) and surety. As “sureties
 
 in solido ”
 
 Mr. Olsen as “surety” and Mrs. Olsen as “surety” agree to “be liable for any financial harm occasioned by Mable [sic ] Sharp DeMarco as per LSA-C.C.P. Art. 4132 A(3)” and for “any liability that Lloyd E, Olsen, Jr. may incur in favor of Mable [sic] Sharp DeMarco on account of his duties as curator.”
 

 Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of
 
 another
 
 upon the failure of the latter to do so. La. C.C. art. 3035. (Emphasis added.) A legal surety-ship is one given pursuant to legislation, administrative act or regulation, or court order. La. C.C. art. 3043.
 

 Mrs. DeMarco, through her retained counsel, emphasizes that a principal may not properly act as surety for his own obligation. She is, of course, correct on that point. By definition, a surety is an accessory, contingent obligor bound to sat
 
 *430
 
 isfy his principal’s primary obligation in the event the principal fails to do so.
 
 [7]
 
 The legal concept of suretyship contemplates two distinct persons, the principal obligor and the accessory | |9obligor or surety. A principal cannot serve as surety for his own obligation.
 
 See Bayne v. Cusimano,
 
 50 La.Ann. 361, 865-66, 23 So. 361, 363 (La.1897), and
 
 Franco v. Franco,
 
 04-0967, p. 11 (La.App. 4th Cir.7/28/04), 881 So.2d 131, 138.
 
 [8]
 

 As Mr. Olsen cannot legally serve as surety for himself, the curator’s bonds had only one surety, Mrs. Olsen. Thus, the bonds filed by Mr. Olsen plainly did not comply with the requirements of La. C.C.P. arts. 4132(A)(3) and 4563(A), and he never legally qualified as either temporary curator or curator. The question then becomes, what is the effect of those omissions?
 

 A factual finding that interdiction is warranted is not predicated upon the
 
 qualification
 
 of a curator, although a curator must be
 
 appointed
 
 as part of the judgment of interdiction.
 
 See
 
 La. C.C.P. art. 4551(A).
 
 [9]
 
 In summary, we conclude that the failure of Mr. Olsen to properly qualify as curator following the judgment of interdiction does not of itself affect the trial court’s factual finding that full interdiction was warranted or its judgment of interdiction. However, we further conclude that Mr. Olsen’s threshold failure to qualify as curator deprived him of legal standing to challenge or oppose the claim of Mrs. De-Marco’s retained counsel for attorney fees and costs under the contract for legal services. Thus, to the extent that the trial court considered Mr. Olsen’s arguments relating to the issues of Mrs. LnPeMarco’s attorney fees billed by her counsel, it may have committed legal error.
 
 [10]
 

 Damages for Frivolous Appeal
 

 Mr. Olsen characterizes this appeal as a “frivolous appeal,” and by brief seeks an award of attorney fees and costs (presumably against opposing counsel) under La. C.C.P. art. 2164 and Rule 2-19 of the Uniform Rules of Louisiana Courts of Appeal. But we note that he did not answer the appeal or file an independent appeal to properly seek such damages.
 
 See
 
 La. C.C.P. art. 2133 and
 
 Jackson Nat’l Life Ins. Co. v. Kennedy-Fagan,
 
 03-0054, pp. 10-11 (La.App. 1st Cir.2/6/04), 873 So.2d 44, 51,
 
 writ denied,
 
 04-0600 (La.4/23/04), 870 So.2d 307. Accordingly,
 
 *431
 
 such damages would not be procedurally recoverable even if we were to hold that the appeal is frivolous.
 

 Additionally, and more importantly, because Mr. Olsen did not properly qualify as curator, he has no right of action to seek damages for frivolous appeal as curator acting on behalf of Mrs. DeMarco’s estate. We accordingly raise and sustain
 
 sua sponte
 
 the peremptory exception’s objection of no right of action as to such claim. It is therefore unnecessary for us to address the merits (or lack thereof) of the claim for damages for frivolous appeal.
 

 Discourteous Language in Appellate Brief
 

 On one page of Mr. Olsen’s brief, addressing the issue of attorney fees and expenses, the following statements appear:
 

 It seems that, in essence, Mrs. DeMar-co’s Appeals Counsel [sic ] is complaining that the “reduced” attorney fee was “not fair.” ... However, Appellee submits that what is not fair is
 
 an attorney taking advantage of a woman
 
 whose dementia, |21according to her treating physician, ... was “obvious” by November 11, 2007. What is not fair is convincing Mrs. DeMarco to sign a contract for legal services at the rate of $300.00 per hour, double that charged by Appel-lee’s counsel.... What is not fair is the manner in which [Mrs.] DeMarco’s Appeals Counsel
 
 [sic] insinuated himself into these proceedings
 
 .... What is not fair is
 
 his continuing insinuation
 
 into an otherwise private and painful family situation which requires the expenditure of additional attorney’s fees for what amounts to a frivolous appeal.
 
 What is not fair the perfidy to the legal profession and the appearance greed and avarice.
 
 [sic ]■
 

 (Emphasis added.)
 

 In her reply brief, Mrs. DeMarco’s counsel objects to the foregoing language as violative of Rule 2-12.4 of the Uniform Rules of the Louisiana Courts of Appeal, relating to the form and general content of appellate briefs. In pertinent part, Rule 2-12.4 provides:
 

 The language used in the brief shall be courteous, free from vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class of persons or association of persons, or any court, or judge or other officer thereof, or of any institution. Any violation of this Rule shall subject the author, or authors, of the brief to punishment for contempt of court, and to having such brief returned.
 

 Even in its incomplete and ungrammatical state, the last emphasized sentence is strongly suggestive of unethical or unprofessional conduct and dishonesty and disloyalty to a client on the part of Mrs. DeMarco’s retained counsel.
 
 [11]
 

 See, e.g., Malevitis v. Friedman,
 
 323 Ill.App.3d 1129, 1132, 753 N.E.2d 404, 407, 257 Ill.Dec. 209, 212 (Ill.App.2001). The use of such language is unnecessary, unsupported by the evidence in the record, and adds nothing substantive to the argument on the issue.
 

 The accusations of Mrs. DeMarco’s counsel’s “continuing insinuation into an otherwise private and painful family situation” appear to be based, at 122least in part, upon his attempts to meet privately with his client outside the confines of the first assisted living facility into which she had
 
 *432
 
 been placed by Mr. Olsen. In that regard, we observe that La. C.C.P. art. 4544(B) imposes the following affirmative duties upon an attorney representing the defendant in an interdiction action, in addition to the general professional duties imposed by the Rules of Professional Conduct:
 

 The attorney representing a defendant shall personally visit the defendant unless such visit is excused by the court for good cause. To the extent possible, the attorney shall discuss with the defendant the allegations in the petition, the relevant facts and law, and the rights and options of the defendant regarding the disposition of the case. Failure of the attorney to perform any of the duties imposed by this Paragraph shall not affect the validity of the proceeding, but may subject the attorney to sanctions.
 

 Like many interdiction cases, the present case involves painful decisions and conflicting interests relating to the health, safety, and personal dignity of a human being afflicted with a tragic debilitating condition. But there is nothing in the record that convincingly supports the sinister and devious motives attributed to Mrs. DeMarco’s counsel by Mr. Olsen, as opposed to legitimate attempts to comply with his obligations to defend his client and advance her expressed wishes as he understood them.
 

 Despite the increased emphasis on professionalism implemented by the bench and bar in the last two decades, we regret to say that all too often its precepts appear to be more honored in their breach than in their observance. We have always been reluctant to impose sanctions upon counsel under this rule unless its violation is clear and unmistakable. We also recognize the emotional context inherent in contested interdiction proceedings. Nevertheless, we consider it necessary and appropriate to strike the offensive language from Mr. Olsen’s brief and to incorporate in this opinion this formal admonishment of his counsel for such ill-considered | ¡.¿¡and inappropriate assertions, which at the very least implicitly disparage (if not openly impugn) opposing counsel’s professional character.
 
 See Stroscher v. Stroscher,
 
 01-2769, pp. 9-11 (La.App. 1st Cir.2/14/08), 845 So.2d 518, 527-28. We exercise our discretion and will not hold counsel in contempt.
 

 DECREE
 

 The trial court’s judgment of January 14, 2009, ordering a full interdiction of the defendant-appellant. Mabel Sharp De-Marco, is affirmed. The trial court’s judgment of March 17, 2009 is reversed, and judgment is rendered in favor of the defendant-appellant, Mabel Sharp DeMar-co, and her attorney, the Block Law Firm, awarding the sums of $42,255.00 for attorney fees and $9,408.77 for costs and expenses, subject to credit for amounts already paid. The purported claim for damages for frivolous appeal of the plaintiff-appellee, Lloyd E. Olsen, Jr., is dismissed by sustaining a peremptory exception of no right of action. The offensive language contained in the plaintiff-appel-lee’s brief, quoted herein, is ordered stricken from the brief, and counsel for the plaintiff-appellee is formally admonished as a sanction for use of such language. All costs of this appeal are assessed to the plaintiff-appellee.
 

 AFFIRMED IN PART; REVERSED AND RENDERED IN PART; EXCEPTION OF NO RIGHT OF ACTION SUSTAINED
 
 SUA SPONTE
 
 AS TO AP-PELLEE’S CLAIM FOR FRIVOLOUS APPEAL.
 

 DOWNING, J., concurs.
 

 [1]
 

 . Mrs. DeMarco’s first name was misspelled in the petition and its caption.
 

 [2]
 

 .
 
 In re Interdiction of DeMarco,
 
 2009 CW 0193 (La.App. 1st Cir.3/4/09) (unpublished writ disposition).
 

 [3]
 

 . With client consent and where the lawyer’s fee is based on an hourly rate, a reasonable charge for paralegal services may be chargeable to the client. Louisiana State Bar Association Rules of Professional Conduct, Rule 1.8(e)(3).
 

 [4]
 

 . Assuming that the trial court found the time of 130.9 hours to be accurate, the hourly rate for attorney time was reduced to slightly over $175.00.
 

 [5]
 

 .
 
 See
 
 Louisiana State Bar Association Rules of Professional Conduct, Rule 1.5(a)(3).
 

 [6]
 

 . From our reading of the prior writ application decision, we cannot determine whether that bond was omitted from the record of the writ application, or whether our decision was predicated upon the apparent absence of the curator's oath or a substantive defect of the bond.
 

 [7]
 

 . The definition of "surely” in Louisiana is not the same as that of the common law. Rather, "surety” under our law is essentially synonymous with "guarantor" under the common law.
 
 See Black's Law Dictionary
 
 724, 1482 (8th ed.2004).
 

 [8]
 

 . As succinctly stated by the court in
 
 Franco,
 
 the absence of a specific prohibition in our law against a principal obligor acting as his own surety "is intentional as such a right to collect from a [principal obligor] is already guaranteed by law and the additional personal guarantee would add nothingf]”
 
 Franco,
 
 04-0967 at p. 11, 881 So.2d at 138. In other words, "there is no specific prohibition against one acting as one’s own surety on a judicial bond because it is too obvious to need stating.”
 
 Id.
 

 [9]
 

 . Louisiana Code of Civil Procedure article 4541(A) provides that "any person,” not only a relative, may file a petition for interdiction, but the petitioner must state his relationship to the defendant "with particularity” and must verily the petition. The final judgment of interdiction of January 14, 2009 specifically provided that "[t]he powers of the curator commence only upon qualification,” as required by La. C.C.P. art. 4551(A)(3).
 

 [10]
 

 . Mrs. DeMarco urges us to declare all actions taken by Mr. Olsen subsequent to the judgment of interdiction to be null and of no legal effect, and to rescind the issuance of letters of curatorship and undercuratorship. We decline, as those issues are not properly before us at this time, and should properly be addressed first by the trial court.
 
 See
 
 La. C.C.P. arts. 4553, 4554, 4568, and 4569(B).
 

 [11]
 

 . “Perfidy” is generally defined as "the quality or state of being faithless or disloyal” or "treachery,” or "an act or instance of disloyalty.”
 
 Merriam-Webster's Collegiate Dictionary
 
 920 (11th ed.2008). Disloyalty to a client is one of the most serious ethical lapses of which an attorney may be accused.
 
 See, e.g., La. State Bar Ass’n v. Wilkinson,
 
 562 So.2d 902, 907-09 (La. 1990).