IN THE MATTER OF "LRB"

NO. 22-CA-140

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 823-402, DIVISION "P"
HONORABLE LEE V. FAULKNER, JR., JUDGE PRESIDING

December 28, 2022

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and Hans J. Liljeberg

**<u>AFFIRMED; REMANDED</u>**

    **SJW**
    **FHW**
    **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Assistant Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
BRITT WILLIAM BULLINS AND ROSE BULLINS
   Arthur A. Lemann, IV

COUNSEL FOR CURATOR/APPELLEE,
L. R. B.
   Rudy W. Gorrell, Jr.

**WINDHORST, J.**

Appellants, Britt Williams Bullins and Rose Bullins, appeal the trial court's judgment denying a preliminary and/or permanent interdiction over Lakyn Rose Bullins ("Lakyn"), and terminating the emergency *ex parte* temporary judgment of full interdiction granted on December 7, 2021 over Lakyn and the letters of temporary curatorship issued to appellants. For the following reasons, we affirm the trial court's judgment.

This case involves an 18-year old female who, upon reaching the age of 18 on December 2, 2021, decided to significantly redirect her life in a manner which caused serious concern to appellants, Mr. Bullins, Lakyn's father, and Ms. Bullins, her paternal grandmother, who had raised her. From about the age of 18 months until adulthood, Lakyn lived with Ms. Bullins, but visited her mother in Texas at certain times of the year. While visiting her mother for Thanksgiving in November 2021, Lakyn became heavily involved with the Church of Wells, an allegedly cult-like religious group in Wells, Texas. At this point or immediately thereafter, she decided to move to Wells, forego high school graduation, college, or a job outside the Church of Wells, and turn her life focus to the church. Because of these decisions, appellants filed a petition to interdict her.

**PROCEDURAL HISTORY and FACTS**

On December 6, 2021, Lakyn's father, Mr. Bullins, and her grandmother, Ms. Bullins, filed an "emergency *ex parte* petition for temporary full interdiction and appointment of temporary curator and undercuratrix, and for *ex parte* temporary judgment of full interdiction." In the petition they alleged that Lakyn, 18, was incapable of making prudent decisions for herself or making juridical acts as she labors under some special incapacity. They also alleged that because of Lakyn's deficits, psychological and mental capabilities, and current state of mind, she was

behaving in a manner deleterious to her own well-being and a danger to herself and/or others.

On December 7, 2021, the trial court signed a temporary judgment of full interdiction, appointing Mr. Bullins as temporary curator and Ms. Bullins as temporary undercurator. On December 14, 2021, the trial court issued letters of temporary curatorship to Mr. Bullins.

On January 6, 2022, the trial court conducted an evidentiary hearing on the interdiction, after which it terminated the temporary interdiction, temporary curatorship, temporary undercuratrix, and letters of temporary curatorship. At the hearing, the following individuals testified: (1) Pastor Jonas Robertson; (2) Ms. Bullins; (3) Hannah Bullins; (4) Megan Alsop, Psy.D.; and (5) Scayne Driver.

Pastor Robertson's testimony indicates that he became involved in this matter because Lakyn's aunt and uncle, Hannah and Ben Bullins, who have been members at his church, Abundant Life, in Harvey, Louisiana for many years, asked for his help as they were concerned for Lakyn's well-being. Ben and Mr. Bullins are brothers, and Ben and Hannah have had a close relationship with Lakyn since she was young. Pastor Robertson testified that in an attempt to help, he tried unsuccessfully to visit Lakyn when she was a patient at Oceans Behavioral Hospital in Gretna, Louisiana. At that point, Pastor Robertson learned that Oceans had released Lakyn. He understood that she had left Oceans with Rick Trudeau of the Church of Wells.

After the trial court signed the temporary interdiction order, Pastor Robertson, at Ben and Hannah's request, traveled to Texas with them to pick up Hannah and bring her back to Louisiana. He testified that, early in the car ride, Lakyn was disrespectful, said hurtful things, and refused to listen to them, but that as the trip progressed, she did become more amicable, and eventually they had friendly conversation.

Rose Bullins, Lakyn's grandmother, testified that Lakyn's mother, Tonia Johnson Driver, left Lakyn with her when she was 18 months old. Thereafter, Lakyn's father, Britt Bullins, had sole custody, but Ms. Bullins had provisional custody and did everything for her granddaughter. She testified that Lakyn did well in school, was involved in sports, and wanted to graduate from high school and go to college. At the time of the January 6, 2022 hearing, Lakyn was scheduled to graduate from high school in May 2022, needing only four credits and to take the ACT. However, after visiting her mother in Texas in November 2021 and becoming involved with the Church of Wells, Lakyn no longer cared about school or going to college. Ms. Bullins stated that she became a different person, that it was like "talking to a robot," and that she seemed to rely on other people to tell her what to do.

Ms. Bullins also testified that on December 1, 2021, just before her 18th birthday, Lakyn attempted to take a bus back to Texas, but her uncle, Ben Bullins, found her sitting at the bus station before she left. She refused to go with him, so he called the police, and they held her until her father or grandmother arrived. She eventually went home with Ms. Bullins. Later that same night, Lakyn went to visit a former boyfriend, but returned about thirty minutes later frantically "banging on the door" and saying "I've got to go. I made a mistake." She ran out of the house down the street screaming. Someone called the police and an ambulance. Lakyn was taken by ambulance to West Jefferson Medical Center and thereafter transferred to Oceans Behavioral Hospital. On or about December 7, 2021, after Lakyn turned 18, Oceans released her to Rick Trudeau from the Church of Wells.

Ms. Bullins further testified that she sought to interdict Lakyn because she had become a totally different person and was making decisions that were not in line with choices she had voiced her whole life. Ms. Bullins testified that she believes, based on Lakyn's actions, that she was brainwashed. She asserted that Lakyn is not the person who lived with her for 18 years and that her involvement with the Church

of Wells is not a good decision for Lakyn because it is a cult. Ms. Bullins testified that she just wants her to finish high school and go to college.

Lakyn's aunt, Hannah Bullins, testified that she has known Lakyn since she was a child, that they have always been close, and that she and her husband have had a good relationship with Lakyn. The record indicates that after the temporary interdiction order was issued, Ben and Hannah traveled to Texas and brought Lakyn back. Lakyn lived with them until the interdiction hearing.

At the hearing, Hannah testified that before Thanksgiving of 2021, Lakyn was a respectful, sweet, kind, typical teenager, trying to find out who she was, had goals and ambitions, and enjoyed being around the family. After visiting Texas for Thanksgiving of 2021, Hannah found Lakyn to be a different person. She no longer believed she needed to go to school or to have a job, and Lakyn was convinced that she was not saved. In addition, Hannah stated that she saw Lakyn change every time she got on the phone with the people from the Church of Wells, as though she was receiving marching orders.

In response to questioning from Lakyn's attorney, Hannah stated that Lakyn can physically take care of herself, but that she does not think she can emotionally and mentally handle herself. She also testified that the family became very concerned after they learned some things about the Church of Wells, which Lakyn had joined while in Texas. Hannah was also very concerned about Lakyn's drastic personality changes in that she no longer liked to do any of the things she previously enjoyed, like sports.

Hannah further testified that Mr. Bullins asked her and her husband to go to Texas to pick up Lakyn because Lakyn's mother had called him, expressed concern about Lakyn, and asked him to come get her. Lakyn told them that although she could live with her mother in Texas, she preferred to live at the Church of Wells because there were drugs at her mother's house. Hannah also testified that when she

22-CA-140                                                                 4

and Ben went to Texas to pick up Lakyn, Lakyn's mother said she was very concerned about Lakyn's transformation, and that she found Lakyn to be a totally different person in a matter of five days. Her mother told them that when Lakyn told her that she intended to stay in Texas at the Church of Wells, her mother called Mr. Bullins.

Appellants called Megan Alsop, Psy.D., as their expert in clinical psychology. In the course of evaluating Lakyn, Dr. Alsop conducted a number of tests, and listened to Lakyn's perspective on the situation, any symptoms she was experiencing, and her history. She also reviewed available records and questionnaires completed by Lakyn, and considered information from those who know Lakyn well, and other medical personnel who have evaluated her. In reviewing Lakyn's records from Oceans, she acknowledged that the Oceans physician found that Lakyn was not having paranoid thoughts or delusions, and that there was nothing to qualify her for a psychosis disorder. The Oceans physician found that she was hyper-religious and showed evidence of poor judgment.

Dr. Alsop conceded that Lakyn did not meet the criteria for any psychotic disorder, is not gravely disabled, and showed no signs that would suggest she could potentially harm herself or others. Dr. Alsop diagnosed Lakyn with an adjustment disorder and a disturbance in conduct mood, and recommended drug monitoring and therapy to address her traumatic experiences and to process the major changes she has been making. If, however, Lakyn did not want to be monitored for drug use or participate in therapy, Dr. Alsop could not recommend that interdiction was necessary.

By written judgment dated January 10, 2022, the trial court terminated the temporary interdiction, the temporary curatorship, the temporary undercuratrix, and the letters of curatorship. In open court, the trial court verbally expressed its reasons

for finding there was not clear and convincing evidence interdiction was necessary. The trial court provided the following reasons:

> I certainly believe that Ms. Bullins' grandmother and her father certainly have her best interest at heart. And their concerns, the Court certainly believes that their concerns are legitimate concerns that they have; however, the request for an interdiction is a very, very serious request. As such, the Code of Civil Procedure Article 4548 reads that the petitioner in an interdiction proceeding bears the burden of proof by clear and convincing evidence, clear and convincing evidence, not by a preponderance of the evidence. The Court has heard specifically the testimony of the doctor in this matter, and the Court has taken into consideration what she indicated; that there were no competency issues. There are no mental health issues. She does not meet the criteria for any psychosis. She is not gravely disabled, and she's not a harm. She does not pose harm to herself or others; so with that standard, proof by clear and convincing evidence, this Court finds that the evidence, including the documents and testimony, does not meet the burden of clear and convincing evidence necessary to secure an interdiction in this matter. As such, the Court terminates and/or vacates the previous interdiction judgments and any orders previously appointing a curator or an under-curator.

After the hearing, appellants filed a motion to supplement the record with the expert's report and the exhibits she considered in preparing her report. The trial court denied this motion. Appellants re-urged this motion by filing a motion for reconsideration to supplement the record, which the trial court also denied. This appeal followed.

Pursuant to this court's order and La. C.C.P. art. 1918 A, on October 28, 2022, the trial court issued an amended judgment expressly denying a preliminary and permanent interdiction, and dismissing appellants' petition with prejudice.

**LAW and ANALYSIS**

On appeal, appellants assert that the trial court erred by denying the interdiction or alternatively by not ordering a limited interdiction; erred by ruling from the bench and not considering all the evidence; and abused its discretion by

excluding from evidence the reports and underlying documentation of the court-appointed psychologist.

### *Interdiction*

With regard to interdiction, La. C.C. arts. 389 and 390 provide:

> Art. 389. A court may order the full interdiction of a natural person of the age of majority, or an emancipated minor, who due to an infirmity, is unable consistently to make reasoned decisions regarding the care of his person and property, or to communicate those decisions, and whose interests cannot be protected by less restrictive means.

> Art. 390. A court may order the limited interdiction of a natural person of the age of majority, or an emancipated minor, who due to an infirmity is unable consistently to make reasoned decisions regarding the care of his person or property, or any aspect of either, or to communicate those decisions, and whose interests cannot be protected by less restrictive means.

To establish that interdiction is necessary, the party seeking an interdiction has the burden of proving interdiction by clear and convincing evidence. La. C.C.P. art. 4548. Interdiction is a harsh remedy and requires proof that the person to be interdicted is mentally incapable of administering his or her estate and is unable to take care of his or her person. In re Smith, 94-262 (La. App. 5 Cir. 11/16/94), 646 So.2d 1052, 1060, *writ denied sub nom.* In re Interdiction of Smith, 94-2996 (La. 2/3/95), 649 So.2d 407. A limited interdiction may be imposed when either form of incapacity is proved and where necessity is shown. Interdiction of F.T.E., 594 So.2d 480, 485 (La. App. 2nd Cir. 1992).

Because the determination of whether to order interdiction is a finding of fact, an appellate court will not set aside the trial court's finding in the absence of manifest error or a clearly wrong determination. Interdiction of Cornwell v. Cornwell, 97-425 (La. App. 3 Cir. 10/15/97), 702 So.2d 938, 940. The trial court may accept or reject, in whole or in part, uncontradicted opinions expressed by an expert as to the ultimate facts, based upon the other evidence admitted at trial. Interdiction of DeMarco, 09-1791 (La. App. 1 Cir. 4/7/10), 38 So.3d 417, 424.

We agree with the trial court's conclusion that appellants failed to show by clear and convincing evidence that interdiction was necessary in this case. There was no evidence that Lakyn is infirm, unable to make reasoned decisions regarding the care of herself, or to communicate those decisions to others. As a result, the record does not show that Lakyn is mentally incapable of administering her estate or unable to take care of her person.

Appellants seek interdiction of Lakyn who is an 18-year old female, because they are concerned that she is making very misguided major life changes. Until recently, she has been largely well adjusted, successful academically, and enjoyed spending time with her family and playing sports. Before joining the Church of Wells, she intended to graduate high school, take the ACT, and attend college. After becoming heavily involved with the Church of Wells, believed by them to be a cultish religious group, she pronounced that would not complete high school or go to college. She decided to move to Wells, Texas to be a member of the Church of Wells.

Appellants assert that an interdiction is necessary because Lakyn has poor judgment at present and is making unsound decisions. They believe that her involvement in the Church of Wells is detrimental to her well-being and that she should finish high school and go to college. Dr. Alsop's testimony indicates that while she recommended therapy and drug monitoring for Lakyn, even if Lakyn was unwilling to participate, she could not conclude that interdiction was appropriate or necessary. In addition, the testimony of family members indicated that Lakyn was capable of taking care of herself and making decisions.

Based on the evidence and testimony presented, the trial court determined that interdiction was not appropriate because there were no competency issues; there were no mental health issues; Lakyn did not meet the criteria for any psychosis; she was not gravely disabled; and there was no threat of harm to herself or others. After

our thorough review of the record, we cannot say the trial court's conclusions are manifestly erroneous or clearly wrong.

Lakyn's choice to not finish high school and/or not go to college is not a sufficient basis for interdiction. While it is understandable that appellants are concerned and alarmed about her involvement in the Church of Wells and the sudden changes in her personality we cannot say the evidence satisfies the legal requirements for interdiction, *i.e.*, a showing that Lakyn is mentally incapable of administering her estate and/or unable to take care of her person. In re Smith, *supra*.

Accordingly, we do not find that the trial court erred in denying appellants' request for full or limited interdiction in this matter.

### *Admission of Expert Report and Records Considered*

Appellants assert that the trial court abused its discretion in ruling on the case without taking the time to consider the expert psychologist's report and by excluding from evidence the report and underlying documentation of the court-appointed psychologist.

A trial court is given vast discretion relative to its evidentiary rulings, and its decision to admit or exclude evidence will not be reversed on appeal in the absence of a clear abuse of discretion. Finch v. ATC/Vancom Mgmt. Servs. Ltd. P'ship, 09-483 (La. App. 5 Cir. 1/26/10), 33 So.3d 215, 218. In reviewing a trial court's evidentiary rulings, the appellate court must first consider whether the particular ruling complained of was erroneous, and if so, whether the error prejudiced the complainant's case, with reversal warranted only if the error prejudiced the complainant's case. Perniciaro v. Hamed, 20-62 (La. App. 5 Cir. 12/16/20), 309 So.3d 813, 834-35. The test for whether the error prejudiced the complainant's case is whether that error, when compared to the record in its totality, has a substantial effect on the outcome of the case, and it is the complainant's burden to so prove. Id.

Appellants' contention that the trial court failed to consider the expert report in this matter is incorrect. The record shows that Dr. Alsop, the expert psychologist, testified at length, was questioned by both attorneys and the court, and that the court considered her opinion in this matter. The court engaged in a discussion with Dr. Alsop regarding her opinions and directly asked her if she thought interdiction was necessary. In addition, in its verbal reasons, the trial court specifically stated that it considered the expert's opinion in reaching its decision.

With regard to admission of the expert report, the record indicates that during closing arguments, appellants' counsel stated that "I respectfully submit to the Court that offering, filing and introducing into evidence the psychological evaluation, sixteen pages and all of the documents that are reviewed by the evaluator should be filed into the record…." Apparently, because this statement was amid counsel's closing argument and after the close of evidence, the trial court did not rule on the request. The record does not indicate that there was an objection to its admission as appellee's counsel stated, "Nobody has questioned or said that there was something wrong with the report." The court never admitted or denied the introduction of the report and the attachments into evidence.

After the hearing, appellants filed a motion to supplement the record with the expert report and the records she reviewed relative to her psychological evaluation. The trial court denied this motion. Appellants then filed a motion for reconsideration to supplement the record with incorporated memorandum, asserting that the expert report was offered, filed and introduced into the record during the expert's testimony and at the conclusion of the evidence presented.

Given that the report and the records reviewed were not formally admitted into evidence during the hearing, the extensive sworn expert testimony by appellants' expert, and the vast discretion afforded the trial court in evidentiary rulings, we cannot say the trial court abused its discretion in not granting the motion

to supplement or motion to reconsider. At that time, the hearing had concluded. Furthermore, the transcript indicates the trial court clearly considered the opinion of the expert, and that the admission of the report and the records would not have altered its ruling. We therefore find no prejudice as a result of the report and records not having been admitted into evidence.

### *Attorney Fees*

Counsel for appellee seeks reasonable attorney fees and court costs for defending this appeal under La. C.C.P. art. 5096, which states: "The court shall allow the attorney at law appointed to represent a defendant a reasonable fee for his services, which shall be paid by the plaintiff, but shall be taxed as costs of court." This court has held that this language is mandatory, *i.e.,* "the court *shall* allow" the attorney a fee. State in Int. of M.L.W., 12-331 (La. App. 5 Cir. 12/11/12), 106 So.3d 1121, 1123, writ denied, 13-93 (La. 3/1/13), 108 So.3d 1175. Other courts have also held that according to the clear language of La. C.C.P. art. 5096, the payment of a "reasonable fee" to court appointed attorneys for their services is mandatory. Lovett v. Brown, 03-1749 (La. App. 3 Cir. 6/30/04), 879 So.2d 406, 410; State, DOTD v. Falcone, 487 So.2d 588 (La. App. 4th Cir. 1986). A "reasonable fee" has no qualifications or limitations except those inherent in the determination of reasonableness. Lovett, 879 So.2d at 410. Moreover, where a curator has been forced to expend additional effort defending an appeal, this court has allowed collection of an additional fee for that work as well. State in Int. of M.L.W., 106 So.3d at 1124.

The trial court ordered appellants to pay all court costs and fees but did not determine the appropriate amount of costs and fees due defense counsel in this matter. Based on the law, we find that appellee's counsel is also entitled to a reasonable fee for defending this appeal. The only costs referred to in the appellee brief, however, include a $35 fee for the record. We therefore remand this matter to

the trial court to determine a reasonable amount of attorney fees for handling this matter, including appellee counsel's time and efforts in defending this appeal.

**DECREE**

For the foregoing reasons, we affirm the judgment of the trial court. We further remand this case to the trial court to consider and determine reasonable fees and costs due defendant/appellee's counsel.

<u>**AFFIRMED; REMANDED**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 28, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 22-CA-140

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. LEE V. FAULKNER, JR. (DISTRICT JUDGE)
ARTHUR A. LEMANN, IV (APPELLANT)          MICHAEL G. CALOGERO (APPELLANT)          RUDY W. GORRELL, JR. (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED